RCA PHOTOPHONE, INC., v. SHARUM.

4-3560

Opinion delivered October 15, 1934.

*Cunningham & Cunningham,* for appellant.

*Mamie McKenzie Crump* and *Beloate & Beloate,* for appellee.

BAKER, J. This is a replevin suit brought by appellant against appellee to recover possession of certain electric sound reproducing motion picture equipment, used by the appellee in his theater at Walnut Ridge. A description of the property is unnecessary. The plain-

tiff alleged in its complaint that the value of the property is $800, and that it is entitled to the immediate possession of the same, and prayed for the recovery and $250 damages. It set up its title in the equipment under a lease, copy of which was made an exhibit to the complaint. It pleaded also that the appellee executed two notes, one for the payment of $25 weekly on each consecutive Saturday for a period of twelve weeks, commencing on the 12th day of June, 1931, and the second note for the payment of $52 weekly on each consecutive Saturday for a period of 74 weeks commencing on Saturday, the 9th day of September, 1931, and that the appellee was in default in the payments, the first default being for a balance of $7 on the 19th day of September, 1931, and $52 each Saturday from that date until March 12, 1932, making a total default of $1,307. As we understand appellant's presentation of the case, these notes were set up, and the defaults shown in order to show the breach of the contract by which the property was leased to the appellee, and that appellant, on account of the said defaults, was entitled to retake the property, in accordance with the lease contract signed by appellee.

Appellee answered the complaint and denied that the appellant was entitled to the possession of the equipment or for judgment for damages and costs; denied that the equipment was leased or that he executed the promissory notes; and pleaded further that, if there was a contract, it was a contract of sale and not a lease, the title being retained until the purchase money was paid. He alleged further, by way of cross-complaint, that on the 8th of March, 1932, the equipment mentioned in the complaint was in the Sharum Theater, owned and operated by him, and that, among other things, the property was equipped with certain sound equipment, without which the theater could not operate, and that on that date the appellant by its agent, Hughes, had taken from the theater a certain part of this sound equipment, disabling the sound system to such an extent that it could not be used, and that, on account of the removal of such part, the optical sound system, he was unable to operate his theater; that he had pictures booked and paid for

until March 8, 1932, and for each evening thereafter for two or three weeks; that he was playing to a large house, making a profit of $75 per week and would have continued to make such profit, except for the fact that he was compelled to close the theater by reason of the taking away of the sound system part so removed. He pleaded that, by the removal of this part of the equipment, he lost $225 profit; that he was required to pay for pictures he did not use during said period, in the sum of $450; that on account of being unable to operate for a period of three weeks his business was almost ruined; that for a period of four months thereafter he lost $50 a week on account of poor attendance caused by the closing of his theater, and finally that he had been damaged in the sum of $125 per week to the total of $2,000, and profits, which he should recover, in the amount of $600, and other items totalling finally the aggregate amount of $6,275, for which he prayed judgment.

As an amendment to the cross-complaint, the appellee set up the fact that the plaintiff had no right to the property, and that he was not in arrears; that the plaintiff had promised to refinance defendant's account and to reduce the price of the equipment mentioned in the complaint, and that the terms had been agreed upon, and that it was in violation of this agreement that the plaintiff, the appellant herein, took possession of the property. Answer filed to the cross-complaint denied the material allegations.

Upon trial of the case verdict was for defendant, Sharum, and his damages fixed at $225, and judgment for appellee for said sum. If this judgment be sustained, appellee would be entitled, upon proper motion, to the return of the sound equipment taken from his theater.

This is a sufficient statement of the case, except as to the matter of the contract which will be discussed in the opinion.

The plaintiff, appellant herein, asked for certain instructions. Number one is as follows: "The contract in this case calls for a forfeiture and the right to repossess the property by the plaintiff at any time when

the defendant was in arrears, and the undisputed evidence shows that he was in arrears at the time the property was taken, and you should therefore find for the plaintiff.''

The court refused to give this instruction, but gave other instructions upon which the case went to the jury.

There are certain undisputed matters of fact, asserted by the appellant and admitted by the appellee, which, taken in consideration with the contract, settle each controversy presented to this court.

The contract provides, among other things, for rights and remedies on behalf of the lessor or appellant. The parties to the contract anticipated, among other things, that there might be defaults, and that, in the event of such defaults, indulgencies might be granted, and the effect of such defaults and indulgencies and the rights and remedies of each party are set out in the contract, should any of these conditions arise.

We quote from the provisions of the contract: Section 5. ''Exhibitor (Sharum) accepts the terms, covenants, and conditions in this agreement set forth and agrees to perform the same in the time and manner provided. Exhibitor hereby agrees to pay for the rental and license to use the equipment, premium for insurance (all of which shall be considered as rental), and for service, the total of the amounts payable under the following selected plan, and exhibitor also agrees that said amounts except service charges shall be due and payable to RCA Photophone without set-off or counterclaim on the execution and delivery of this agreement, but for the convenience of exhibitor RCA Photophone hereby agrees to permit exhibitor to pay said sums in accordance with the terms of plan three hereby selected by exhibitor, which permission may be terminated at the option of RCA Photophone in the event of failure by exhibitor to make any of the payments when and as provided by said plan.'' Plan three provides for rental of standard and additional equipment, if any, premium for insurance required by RCA Photophone for the period of the agreement, and services charges for the first two years. Exhibitor will make the following payments which, subject to the pro-

vision of this section, may be made as follows: down payment of $44.60 herewith, receipt of which is hereby acknowledged; weekly payments of $43.85 payable on Saturday of each week for 104 consecutive weeks commencing on the first Saturday following the installation date.

Section 18 provides that, upon the expiration or termination of the agreement, exhibitor will deliver the equipment to RCA Photophone free from all claims and demands, and pay transportation to a point not more distant than the point from which the equipment was shipped, and, "upon default of exhibitor under any provision of this agreement and/or the expiration or termination of this agreement, RCA Photophone may repossess the equipment or any part thereof and shall have the irrevocable right to enter the theater or any other premises where the equipment shall then be, and, without notice or legal proceedings, repossess, and remove the equipment or any part thereof, and exhibitor will cooperate in such repossession and removal and pay any and all expenses of RCA Photophone in connection therewith."

A part of § 20 provides: "No agreement altering, modifying or extending the terms of this agreement shall be valid unless in writing duly signed by the parties by their duly authorized officers."

The original contract provided for the payment, at the end of each week, of a larger amount than the $25 per week, as set out in one note, and the $52 per week, as set out in the other note. The testimony of the parties is fairly clear, but Sharum had defaulted in his payments, and rather persistent efforts had been made for collection; that the notes set out in the complaint and affidavit were given by Sharum as the new method of making payment upon the original contract, which was in no sense otherwise changed or altered. This was done for the accommodation of Sharum to enable him, for a time at least, to pay his indebtedness already in default, and to save himself from the loss of the use of the property. These facts, as they appear from the record, considered most favorably for the benefit of Sharum, show

that he was in default, though the time had long since elapsed within which some of these installments were to be paid.

Appellee says that the only contract he signed was the one exhibited by the plaintiff, appellant herein, and also that the testimony of Heyl, as to the amount of his indebtedness was substantially correct. Heyl says that on March 8, 1932, the date Hughes got possession of a part of the machinery, Sharum was in default $1,307; that on August 7, 1931, the payment of $25 was made, and this left the defaults of July 18, July 25, and August 1. On the 24th of August, Sharum was in default five payments, and on August 31 Sharum sent in $100, still leaving him in default for August 22, 29 and for September 5, and on October 13, 1931, in arrears $439. That was prior to the time that the last or final series of $25 notes were to be paid. The new notes called for $25 for fifteen weeks from January 23, 1932, and $42 for ninety-four weeks from April 30, 1932, but no payments were ever made on these notes. The other payments above mentioned had been credited on the indebtedness that had been existing, and which was evidenced by former notes and the contract.

Sexton, witness for Sharum, and Archer, the sheriff, also witness for Sharum, testified that Sharum admitted the arrearages in payments. Sharum says he doesn't know how much he was in arrears. He asserted that the negotiations were going on in which he was insisting that he was entitled to a 40 per cent. reduction in the original contract price, but he had not secured any contract or agreement allowing that reduction.

Upon the record, as presented here, there was such default in the payments as to entitle the plaintiff, appellant herein, to retake the property. Under the contract it had the right to do so, or to take any part of it.

There had been no action or conduct on the part of the plaintiff, such as to fix the course of dealing contrary to the express terms of the contract. There had been persistent efforts on the part of the appellant to collect its debt, and equally insistent demands on the part of the appellee that he was entitled to a change of

the original contract, a modification thereof, which is admitted had never been made.

Although appellant had the right granted to it under the terms of the contract to enter upon the premises and take therefrom the machinery or any part thereof, we disapprove the surreptitious and deceitful manner of appellant's agent in gaining entrance to the theater and taking therefrom a part of this machinery then in the possession of Sharum. But no damage resulted from this entry in itself. If there was any loss suffered by Sharum, it did not arise out of the manner of obtaining entrance to the building. Whatever loss Sharum may have suffered, if any, arose out of the fact that the appellant took from the machine a part of it so as to disable it completely. It had a right to do that. It is inconceivable that damages can be predicated upon the enforcement of the right, when the enforcement is done in accordance with the agreement of the parties.

It follows, therefore, that the court should have instructed a verdict for the appellant, and, under the case as developed at the time, instruction No. 1, as asked for by appellant, or one to the same legal effect, should have been given, and a judgment should have been rendered for the property sought to be recovered in the action of replevin. .

So much of the contract sued on as has been presented to this court is enforceable, and there is no evidence of change or modification, except as to installments to be paid, and we have sought only to declare the rights and remedies of the parties as they have themselves expressed them. The appellee, no doubt, honestly feels that he is entitled to some reduction, but that is not evidenced by his contract, nor by any amendment to it, and the parties have expressly contracted that "no agreement, modifying or extending the terms of the contract, or agreement, shall be valid unless in writing and duly signed by the parties, or by their duly authorized officers." That part of the contract just quoted would, at least, exclude evidence of any other agreement or understanding had as between Sharum and the agent of appellant at the time this contract was reduced to writing

and signed.  As the case is presented here, Sharum is only contending that negotiations were under way, but not completed, for some modification or change.

We have carefully considered the case cited by appellee, *General Motors Acceptance Corporation* v. *Hicks, ante* p. 62.  That case is easily distinguishable from the instant case.  Mrs. Hicks, in that case, was in default of her payments one month.  This default had occurred many months prior to the time of the taking of the Frigidaire sold her, and upon which she was making regular monthly payments.  It was a course of conduct that had been pursued for such a length of time that she had a reasonable right to believe that the default would not be taken advantage of, so long as she kept up, with reasonable regularity, the payments falling due each month.  In fact, she was assured, by the seller of the Frigidaire, to whom the original contract had been delivered, that this method of payment was satisfactory.  This dealer still had an interest in the paper, because he was a guarantor of her payments by his indorsement and transfer of it to the General Motors Acceptance Corporation.  Without reasonable notice to her of an intention to do so, the General Motors Acceptance Corporation procured entrance to the building, by breaking in, where the Frigidaire was stored, seized upon it and took it away.  Mrs. Hicks was permitted to recover for the conversion of this property and also for other property lost by her on account of the fact that the agent of the General Motors Acceptance Corporation negligently left the doors open and other of her property was left unprotected, and it was stolen while so exposed.  There was a performance in this case, except as to the one payment, which was in default some months previous.

In the case now under consideration, there is persistent and continuous default, with equally persistent efforts on the part of the plaintiff to make collection; the distinction being that in the Hicks case there was a waiver and in the instant case there was not.

This case is reversed and remanded for a new trial.